# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JUSTIN TAROVSKY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 19-4C |
| | ) | (Judge Campbell-Smith) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO SUSPEND PROCEEDINGS

The Department of Justice is reviewing the Court's November 20, 2020 ruling in *Rowe v. United States*, No. 19-67C, and considering whether to seek interlocutory review. No. 19-67C, Dkt. No. 57. Pursuant to Rule 7(b) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court suspend proceedings for 90 days to allow for that consideration.

## BACKGROUND

Each of the 13[1] cases related to the 2018-2019 lapse in appropriations asserts essentially the same set of operative facts. On December 22, 2018, several agencies within the Federal Government ceased operations due to a lapse in appropriations, which affected approximately

---

[1] In short order, the United States intends to file a motion to suspend proceedings in each of the 12 following cases related to the 2018-2019 lapse in appropriations, in which the United States sought dismissal pursuant to RCFC 12(b)(6) of plaintiffs' Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, claims: (1) *Tarovsky v. United States*, No. 19-4C; (2) *Avalos v. United States*, No. 19-48C; (3) *D.P. v. United States*, No. 19-54C; (4) *Arnold v. United States*, No. 19-59C; (5*) Hernandez v. United States*, No. 19-63C; (6) *Rowe v. United States*, No. 19-67C; (7) *Plaintiff No. 1 v. United States*, No. 19-94C; (8) *I.P. v. United States*, No. 19-95C; (9) *Anello v. United States*, No. 19-118C; (10) *Richmond v. United States*, No. 19-161C; (11) *Baca v. United States*, No. 19-213C; and (12) *Jones v. United States,* No. 19-257C. At this time the United States does not intend to move to suspend the related, non-FLSA case *Abrantes v. United States*, No. 19-129C, but may reconsider its position following the Court's ruling on the United States's pending motion to dismiss in that case. In addition, because the Court bases its decision in *Rowe* on its ruling in *Martin v. United States*, 130 Fed. Cl. 578 (2017), a case that is not yet final, we similarly intend to move to suspend proceedings in *Martin*, No. 13-834C.

800,000 Federal employees who work or worked at those agencies.  Plaintiffs in each of these cases, as well as those that various plaintiffs seek to join their respective actions, are Federal employees who, during the lapse in appropriations, were classified as FLSA non-exempt, were "excepted employees" directed to work during the lapse, and who were not paid for that work until after appropriations were restored.  *See* Office of Personnel Management, *Guidance for Shutdown Furloughs*, at § B; *see also* 31 U.S.C. § 1342; *see, e.g., Tarovisky,* No. 19-4, Dkt. No. 6 at § 1; *Plaintiff No. 1,* No. 19-94C, Dkt. No. 7 at § 4.  On January 25, 2019, Congress passed a continuing resolution that provided the affected Federal agencies appropriated funds through February 15, 2019.  116 P.L. 5 § 139.  Following passage of this continuing resolution, Federal employees who had worked and had not been paid during the lapse in appropriations received their wages due for the work performed "at the earliest date possible after the lapse in appropriations end[ed], regardless of scheduled pay dates."  116 P.L. 1, § 2.

Twelve cases seek relief based upon the facts outlined above, including:  (1) liquidated damages totaling the FLSA minimum wages earned by plaintiffs; (2) liquidated damages totaling the FLSA overtime wages earned by plaintiffs; and (3) attorney fees and costs.  *See, e.g., Tarovisky,* No. 19-4C, Dkt. No. 6 at 11-12; *Avalos,* No. 19-48C, Dkt. No. 6 at 14-15.  Numerous cases seek to certify a collective action and to issue notice to prospective plaintiffs.  *See, e.g., Tarovisky*, No. 19-4C, Dkt. Nos. 8, 59; *Arnold*, No. 19-59C, Dkt. Nos. 6, 70.  Several complaints also specifically seek additional damages, including, for example, pre- and post-judgment interest, straight-time liquidated damages, named plaintiff service awards, and a complete accounting of damages.  *See, e.g., Hernandez*, No. 19-63C, Dkt. No. 1 at ¶ 64; *Plaintiff No. 1*, No. 19-94C, Dkt. No. 7 at 24-25; *I.P.*, No. 19-95C, Dkt. No. 1 at 10-11.  A thirteenth case based upon the same set of operative facts as the other cases, *Abrantes*, seeks relief pursuant to the

Border Patrol Agent Pay Reform Act, 5 U.S.C. § 5550, and the Back Pay Act, 5 U.S.C. § 5596. *Abrantes*, No. 19-129C, Dkt. No. 1 at ¶¶ 1-2, 17, 28-34.

On February 13, 2019, and February 22, 2019, the United States filed motions to consolidate the 13 related cases, and plaintiffs filed their responses on various dates. *See, e.g., Tarovisky*, No. 19-4C, Dkt. Nos. 14, 19, 20 (response dated Feb. 27, 2019); *Richmond*, No. 19-161C, Dkt. No. 19 (response dated Mar. 19, 2019). On March 4, 2019, the Court suspended the United States's deadline to respond to plaintiffs' complaints. *See, e.g., I.P.*, No. 19-95C, at Dkt. No. 14. On March 18, 2019, the Court issued an order explaining that, considering the "considerable number of objections and qualifications to the consolidation proposals," the Court reconsidered its prior ruling on the United States's response deadline and reinstated its deadline to file an answer or otherwise respond to plaintiffs' complaints. *See, e.g., id.* at Dkt. No. 19.

On May 3, 2019, the United States filed motions to dismiss in all of the cases except *Abrantes*, for which the United States filed its motion to dismiss on May 17, 2019. *See, e.g., Tarovisky*, No. 19-4C, Dkt. No. 28; *Abrantes*, No. 19-129C, Dkt. No. 23. The motions to dismiss were very similar across the 13 cases, but addressed case-specific issues as well. *See, e.g., Avalos*, No. 19-48C, Dkt. No. 21 at 18-20; *Plaintiff No. 1,* No. 19-94C, Dkt. No. 67 at 17-22. After the plaintiffs in each case responded, the United States filed replies in each case on August 16, 2019. *See, e.g., Baca*, No. 19-213C, Dkt. No. 38; *Jones*, No. 19-257C, Dkt. No. 20.

On November 26, 2019, the Court denied the United States's motions to consolidate, finding that the cases "do not present sufficiently synonymous arguments for the court's consideration such that wholesale consolidation is justified," but permitting the United States to "re-urge consolidation following the court's ruling on the motions to dismiss" if the United States still considered consolidation to be appropriate. *See, e.g., Abrantes*, No. 19-129C, Dkt.

3

No. 32 at 1-2.  In addition, the Court ordered supplemental briefing on the United States's motions to dismiss, directing defendant to clarify its sovereign immunity argument.  *Id*. at 2.  The United States filed its supplemental briefs in each case on December 20, 2019, as ordered by the Court.  *See, e.g., Tarovisky*, No. 19-4C, Dkt. No. 37.  Most plaintiffs filed their supplemental response briefs on or before January 24, 2020, and the remainder filed their supplemental response briefs by February 24, 2020.  *See, e.g., Avalos*, No. 19-48C, Dkt. No. 29 (response dated Jan. 24, 2020); *Richmond*, No. 19-161C, Dkt. No. 35 (response brief filed Feb. 24, 2020).

On March 18, 2020, the United States filed in each case a notice of additional authority, informing the Court of the decision issued by the United States District Court for the District of Columbia on two cases that also arose from the 2018-2019 lapse in appropriations.  *See, e.g., Abrantes*, No. 19-129C, Dkt. No. 35.  The Court struck these notices and instructed the United States to refile its notice as a motion for leave to file supplemental authority, *see, e.g., id.* at Dkt. No. 36, which the United States filed as ordered.  *See, e.g., id.* at Dkt. No. 38.  Plaintiffs each filed their respective responses on or before April 17, 2020.  *See, e.g., id.* at Dkt. No. 39 (response brief filed April 17, 2020); *Hernandez*, No. 19-63C, Dkt. No. 39 (response brief filed April 8, 2020).  The United States filed its replies on April 13, 2020, and April 22, 2020.  *See, e.g., Hernandez*, No. 19-63C, Dkt. No. 40 (filed April 13, 2020); *Anello*, No. 19-118C, Dkt. No. 40 (filed April 22, 2020).

In addition, the United States filed a motion for leave to file supplemental authority regarding the decision by the United States Supreme Court in *Maine Community Health Options v. United States*, No. 18-1023 (U.S. Apr. 27, 2020).  *See, e.g., Tarovisky*, No. 19-4C, Dkt. No. 45.  Following plaintiffs' responses, the United States filed a reply in 12 of the cases on June 2, 2020.  *See, e.g., id.* at Dkt. Nos. 47, 48.

The Court struck as moot the United States's motion to dismiss and motions for supplemental authority in *Plaintiff No. 1*, after the Court granted in-part and denied in-part plaintiffs' motion to proceed anonymously and permitted plaintiffs to file a fourth amended complaint. *See, e.g., Plaintiff No. 1*, No. 19-94C, Dkt. Nos. 103, 108, 110. The United States filed its motion to dismiss in *Plaintiff No. 1* on June 4, 2020. *Id.* at Dkt. No. 112. Following plaintiffs' response, the United States replied on July 15, 2020. *Id*. at Dkt. Nos. 115, 116.

On November 20, 2020, the Court issued its opinion and order on the United States's motion to dismiss pursuant to RCFC 12(b)(6) in *Rowe*, denying the motion. *See, e.g., Rowe*, No. 19-67C, Dkt. No. 57. The Court affirmed its ruling in *Martin v. United States*, 130 Fed. Cl. 578 (2017), holding that the United States violated the FLSA when it failed to pay FLSA non-exempt Federal employees who were excepted from the lapse in appropriations on their regularly scheduled paydays for work performed during the lapse. *See, e.g., Rowe*, No. 19-67C, Dkt. No. 57 at 5-8. The Court also found that the Government Employee Fair Treatment Act of 2019 (GEFTA), which provided that Federal employees affected by the lapse would be paid "at [their] standard rate of pay, at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates," did not amend the Anti-Deficiency Act such that it precluded an FLSA violation. *Id*. at 8-9. The Court issued similar rulings on December 1, 2020 in *Tarovisky v. United States*, No. 19-4C, Dkt. No. 74; *D.P. v. United States*, No. 19-54C, Dkt. No. 60; *Hernandez v. United States*, No. 19-63C, Dkt. No. 66; *I.P. v. United States*, No. 19-95C, Dkt. No. 75; and *Jones v. United States*, No. 19-257C, Dkt. No. 44.

**ARGUMENT**

I. **The Court Should Stay This Case, And Related Cases, Until The Department Of Justice Has Determined Whether It Will Request The Court To Certify Its Decision For Interlocutory Appeal**

The Department of Justice, in coordination with its client agencies, is currently considering whether to request that the Court certify for interlocutory appeal the Court's denial of its motion to dismiss in *Rowe*, pursuant to 28 U.S.C. § 1292(d)(2), and to thereafter petition the United States Court of Appeals for the Federal Circuit for interlocutory review. That consideration requires detailed coordination and consultation within several components of the Civil Division and the Department. Especially in these extraordinary times, this coordination and consultation is a time-consuming process. Consequently, the United States respectfully requests that this Court suspend proceedings for 90 days while the Department of Justice reviews the Court's decisions and considers interlocutory appeal; the United States will likewise move to do the same in the 11 other FLSA-based cases relating to the 2018-2019 lapse in appropriations as well as in *Martin*. Good cause exists to suspend proceedings in these circumstances.

As stated, the Department of Justice is contemplating whether to request the Court to certify for interlocutory appeal the Court's denial of its motion to dismiss pursuant to RCFC 12(b)(6) in *Rowe*. Because the United States' motions to dismiss pursuant to RCFC 12(b)(6) were virtually identical in each of the 11 related FLSA cases, the United States presumes that the Court will deny each of those motions to dismiss, at least with respect to the United States's RCFC 12(b)(6) arguments. At this time, the United States has not yet determined whether it will ultimately request the Court to certify for interlocutory appeal its decision in only *Rowe* and request to stay the remainder; to certify several cases and to request to stay the remainder; to certify all of the cases; or not to pursue interlocutory review. Proceeding with any of these cases

that stem from the same essential facts, while the United States considers whether to seek interlocutory review, would waste the Court's and the parties' scarce and valuable resources.

In particular, when this Court denied the United States's motion to consolidate the 13 cases arising out of the 2018-2019 lapse in appropriations, it explained that the United States could again move for consolidation after the Court ruled on the motions to dismiss. *See, e.g., Tarovisky*, No. 19-4C, Dkt. No. 36 at 2. In its decision denying the United States's motion to dismiss in *Rowe*, the Court ordered the parties to file a joint status report on January 22, 2021, "informing the court of their positions on the consolidation of this case with any other matters before the court." *Rowe*, No. 19-67C, Dkt. No. 57 at 11. Many of the cases each seek to represent all, or some portion, of Federal employees who were affected by the 2018-2019 lapse in appropriations, including through certification of a collective action and issuance of notice. Proceeding with these cases, either individually or in consolidation, will require significant expenditure of resources on the part of the parties and on the Court, which may be obviated by an appeal. Staying this case, the other 11 related FLSA cases, and *Martin*, until the Department of Justice determines whether it will seek interlocutory appeal, will conserve the resources of the Court and of all parties.

A substantial likelihood exists that, if the United States requests it, the Court will determine that interlocutory appeal is appropriate. The Court's November 20, 2020 order in *Rowe* satisfies the statutory criteria for interlocutory appeal because (1) the order involves "controlling question[s] of law with respect to which there is a substantial ground for difference of opinion" and (2) "an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(d)(2).

7

The rationale behind section 1292(d)(2) is judicial economy: interlocutory appeal may permit the Court and the parties to avoid protracted and expensive litigation that could be resolved through immediate appellate review. *Coast Fed. Bank, FSB v. United States*, 49 Fed. Cl. 11, 14-15 (2001); *AT&T Co. v. United States*, 33 Fed. Cl. 540, 540 (1995); *see also In re Lloyd's Am. Trust Fund Litig.*, No. 96-1262, 1997 WL 758739, at *4 (S.D.N.Y. Aug. 12, 1997) (chief concern of interlocutory appeals is to promote the "institutional efficiency of the federal court system"). Interlocutory appeal is thus especially useful in "big cases," where discovery will consume substantial judicial, party, and non-party resources. *See* 16 Charles A. Wright, *et al.*, *Fed. Practice & Procedure* § 3930 (3d ed. updated Aug. 2019); *In re Lloyd's Am. Trust Fund Litig.*, 1997 WL 758739, at *4; *cf. Starr Int'l Co. v. United States*, 856 F.3d 953, 987 (Fed. Cir. 2017) (Wallach, J. concurring) (trial court should resolve threshold questions of jurisdiction and justiciability at a case's outset because it may avert costly discovery and trial).

The question at issue in each of these cases is whether the United States can violate the FLSA when paying its employees on a day other than their regularly scheduled payday during a lapse in appropriations, or whether (1) the Anti-Deficiency Act precludes such payment and (2) GEFTA sets forth the manner and timing in which Federal employees should be paid when such a lapse occurs. This question is controlling in each case because, without a violation of the FLSA, the United States cannot be liable for liquidated damages. *See, e.g., Neb. Pub. Power Dist. v. United States,* 74 Fed. Cl. 762, 763 (2006) (explaining that a question of law is "controlling" when it "materially affect[s] issues remaining to be decided in the trial court.").

Nor has this question been addressed by any other court, including by the United States Court of Appeals for the Federal Circuit.[2]

Further, as evidenced by the proceedings in *Martin v. United States*, No. 13-834C, each of these related cases will very likely consume substantial judicial and party resources as well as non-party resources. *See, e.g., Martin*, No. 13-834C, Dkt. No. 230 (explaining that damages calculations remain ongoing after three-and-a-half years). Many of the parties in the 12 related FLSA cases seek to provide notice to putative plaintiffs and to represent all Federal employees. *See, e.g., Tarovisky*, No. 19-4C, Dkt. No. 59. Should the Court permit notice over the United States's objections, providing notice to all putative plaintiffs will require substantial time and effort, and will require months of time to complete: the parties must agree to the language and method of notice, and receive Court approval, and then notice must be effectuated after ensuring that existing plaintiffs are not sent such notice—a particular concern if notice is sent in only one case and a plaintiff has already joined another. Finally, once all plaintiffs have joined their respective suits and, because no plaintiff should participate in more than one action, they have been sufficiently identified and sorted between the cases, damages must be calculated with the use of an expert consultant.[3] Determining—for each plaintiff—the amount of time they worked

---

[2] Numerous plaintiffs cited to the Court's decision in *Martin* in response to our motions to dismiss, and the Court denied the United States's motion to dismiss based upon the same analysis as in *Martin*. *See Rowe,* No. 19-67C, Dkt. No. 57. As the United States explained above, it intends to similarly move to suspend proceedings in *Martin*, which remains pending until damages calculations are complete.

[3] Regardless of whether the cases are consolidated, plaintiffs' counsel will need to ensure that each plaintiff has joined only one lawsuit as well as ensure that each unique plaintiff can be easily identified by their self-identified employing agency. *See, e.g., Martin*, No. 13-834C, Dkt. No. 205 at 4-5 (moving to dismiss 211 "unidentified plaintiffs"); Dkt. No. 208 (stipulating to the dismissal of 1,050 duplicate claims). Consent forms filed in some of the related cases indicate that significantly more information will be required from each plaintiff before the United States

and to what extent they may be entitled to damages, will require expenditure of significant, costly efforts on the part of both the United States and the plaintiffs. There already exist, in just one of the cases, thousands more plaintiffs than in *Martin*. *See, e.g., id*. at Dkt. No. 81. As the Court has observed, the process in *Martin* has been extremely time consuming, and the United States does not believe there to be a more efficient means of proceeding in these cases. Due to the multiplicity of cases, that effort will increase commensurately.

Proceeding through any of these processes, when an appeal could "materially advance the ultimate termination" of each case, would be inefficient, and a suspension of proceedings in each of the cases until the Court has determined whether to certify its decision for interlocutory appeal is warranted.

## **CONCLUSION**

Accordingly, the United States respectfully requests the Court to suspend proceedings in this case, the 11 related FLSA cases, and in *Martin*, for 90 days while the United States determines whether to seek interlocutory review.

---

will be able to determine the identities of the existing plaintiffs, much less determine any potential damages. *See, e.g., Arnold*, No. 19-59C, Dkt. No. 73 (objecting to filed consent forms).

                                              Respectfully submitted,

                                              JEFFREY BOSSERT CLARK
                                              Acting Assistant Attorney General

                                              ROBERT E. KIRSCHMAN, JR.
                                              Director

                                              <u>/s/ Reginald T. Blades, Jr.</u>
                                              REGINALD T. BLADES, JR.
                                              Assistant Director

                                              <u>/s/ Erin K. Murdock-Park</u>
                                              ERIN K. MURDOCK-PARK
                                              ANN C. MOTTO
                                              VIJAYA S. SURAMPUDI
                                              Trial Attorneys
                                              Commercial Litigation Branch
                                              Civil Division
                                              Department of Justice
                                              P.O. Box 480, Ben Franklin Station
                                              Washington, D.C. 20044
                                              Tel:   (202) 616-3753
                                              Fax:  (202) 514-8624

Dated: December 1, 2020                             Attorneys for Defendant