No. 19-4C
(Judge Campbell-Smith)

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JUSTIN TAROVISKY, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

## DEFENDANT'S MOTION TO CERTIFY THE COURT'S DECEMBER 1, 2020 ORDER FOR INTERLOCUTORY APPEAL AND TO SUSPEND PROCEEDINGS PENDING APPEAL

JOHN V. COGHLAN
Deputy Assistant Attorney General of the
Federal Programs Branch, with delegated
duties of Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

REGINALD T. BLADES, JR.
Assistant Director

ERIN K. MURDOCK-PARK
ANN C. MOTTO
VIJAYA S. SURAMPUDI
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
(202) 616-3753
erin.k.murdock-park@usdoj.gov
Attorneys for Defendant

Dated: January 19, 2021

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES.................................................................................................iii

INTRODUCTION ..............................................................................................................1

ARGUMENT ......................................................................................................................3

    I.      Standard for Certification Under Section 1292(d)(2) ...........................................3

    II.     Certification Under Section 1292(d)(2) Is Warranted ..........................................5

          A.     Whether the Government Is Liable For Liquidated Damages
                  Is A Controlling Question of Law On Which There Is
                  Substantial Grounds For Difference Of Opinion .....................................5

          B.     Immediate Appeal Would Materially Advance The Ultimate
                  Termination Of The Litigation ................................................................10

CONCLUSION..................................................................................................................13

# TABLE OF AUTHORITIES

**CASES**                                                                                                          **PAGE(S)**

*AT&T Co. v. United States*,
    33 Fed. Cl. 540 (1995)................................................................................................................. 4

*Athey v. United States*,
    908 F.3d 696 (Fed. Cir. 2018) ................................................................................................. 8

*Coast Fed. Bank, FSB v. United States*,
    49 Fed. Cl. 11 (2001).............................................................................................................10

*Colonial Chevrolet Co. v. United States*,
    106 Fed. Cl. 619 (2012) .........................................................................................................11

*Emps. of the Dep't of Public Health & Welfare v. Dep't of Pub. Health & Welfare*,
    411 U.S. 279 (1973) ................................................................................................................ 8

*Fairholme Funds, Inc. v. United States*,
    147 Fed. Cl. 126 (Fed. Cl. 2020) ...........................................................................................10

*Ins. Co. of the W. v. United States*,
    No. 99-124C, 1999 WL 33604131 (Fed. Cl. Dec. 10, 1999)........................................... 4

*Johnson v. Burken*,
    930 F.2d 1202 (7th Cir. 1991) ................................................................................................ 6

*Lane v. Pena*,
    518 U.S. 187 (1996) ................................................................................................................ 8

*Lea v. United States*,
    No. 16-43C, 2017 WL 5929229 (Fed. Cl. Dec. 1, 2017) ...............................................10

*Library of Congress v. Shaw*,
    478 U.S. 310 (1986) ................................................................................................................ 8

*Lummi Tribe of the Lummi Rsrv. v. United States*,
    870 F.3d 1313 (Fed. Cir. 2017)..............................................................................................11

*Marriott Int'l Resorts, L.P. v. United States*,
    63 Fed. Cl. 144 (2004)............................................................................................................. 5

*Marriott Int'l Resorts, L.P. v. United States*,
    122 F. App'x 490 (Fed. Cir. 2005) ......................................................................................... 6

*Martin v. United States*,
    117 Fed. Cl. 611 (2014) ....................................................................................................... 9

*Neb. Pub. Power Dist. v. United States*,
    74 Fed. Cl. 762 (2006) ....................................................................................................4, 5

*Palafox St. Assocs. v. United States*,
    114 Fed. Cl. 773 (2014) ..................................................................................................... 6

## STATUTES

28 U.S.C. § 1292(d)(2) ...................................................................................................... passim

29 U.S.C. § 260 ........................................................................................................................... 9

31 U.S.C. § 1341(a)(1) ............................................................................................................... 6

## RULES

RCFC 1 ......................................................................................................................................... 2

## OTHER AUTHORITIES

*Fed. Prac. & Proc.* § 3930 (3d ed. Oct. 2020 update) ................................................................ 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| JUSTIN TAROVISKY, *et al.*, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   No. 19-4C |
| | )   (Judge Campbell-Smith) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION TO CERTIFY THE COURT'S
DECEMBER 1, 2020 ORDER FOR INTERLOCUTORY
APPEAL AND TO SUSPEND PROCEEDINGS PENDING APPEAL**

For the reasons set forth below, the United States respectfully requests that the Court

certify for interlocutory appeal the Court's December 1, 2020 order by amending the order to

include the findings required under 28 U.S.C. § 1292(d)(2). In addition, the United States

respectfully requests that the Court suspend further proceedings pending appeal. Plaintiffs state

their position as follows: Plaintiffs do not oppose an interlocutory appeal as long as they are able

to continue to file consent forms with the court for plaintiffs wishing to opt-in to the case and

either (1) any stay does not prevent the court from ruling on the motion for conditional

certification and, if appropriate, from notice issuing so that putative plaintiffs are provided an

opportunity to opt-in to the lawsuit or (2) the statute of limitations is tolled for the duration of the

appeal such that putative plaintiffs are not prejudiced by the appeal.

**INTRODUCTION**

The United States respectfully requests that the Court certify for interlocutory appeal

under 28 U.S.C. § 1292(d)(2) the question of whether the Government is liable for liquidated

damages under the Fair Labor Standards Act (FLSA) when the Government complies with the

Anti-Deficiency Act's command to defer payment of Federal employees' wages during a lapse in appropriations.[1]

By the December 20, 2020 order, the Court denied the Government's motion to dismiss. Before the parties and the Court dedicate extraordinary time and resources to briefing outstanding issues, conducting discovery, and potentially calculating damages owed to tens of thousands of plaintiffs, however, the Court should permit the United States Court of Appeals for the Federal Circuit the opportunity to consider the same question, which represents precisely the sort of dispositive legal question for which Congress enacted section 1292(d). It is a controlling question of law; there is substantial ground for difference of opinion; and an immediate appeal on the question would materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(d)(2). Certifying the question for interlocutory appeal would promote the most expeditious and inexpensive resolution of this important case. *See* RCFC 1.

Prompt appellate review of the question of whether plaintiffs' claims may proceed is necessary. No party will be prejudiced by determining now whether additional complex and expensive proceedings on plaintiffs' claims will be necessary. Plaintiffs will have a full and fair opportunity to explain their prompt payment theory to the court of appeals, and they will have the benefit of this Court's written decisions in doing so. If the Federal Circuit reverses, this Court's certification decision will have vindicated the parties' and the public's interests by avoiding extremely burdensome proceedings. And if the Federal Circuit affirms, the path

---

[1] Defendant intends to request the Court to certify for appeal the orders in each of the 13 cases related to the 2018-2019 lapse in appropriations, and to suspend proceedings in each case pending appeal: (1) *Tarovisky v. United States*, No. 19-4C; (2) *Avalos v. United States*, No. 19-48C; (3) *D.P. v. United States*, No. 19-54C; (4) *Arnold v. United States*, No. 19-59C; (5) *Hernandez v. United States*, No. 19-63C; (6) *Rowe v. United States*, No. 19-67C; (7) *Plaintiff No. 1 v. United States*, No. 19-94C; (8) *I.P. v. United States*, No. 19-95C; (9) *Anello v. United States*, No. 19-118C; (10) *Abrantes*, No. 19-129C; (11) *Richmond v. United States*, No. 19-161C; (12) *Baca v. United States*, No. 19-213C; and (13) *Jones v. United States,* No. 19-257C.

forward will be clear: the Court will have obtained confirmation of its legal ruling on the

Government's dispositive motion, possibly narrowed any disputes over the appropriate scope of

discovery, and cleared the way for additional proceedings to resolve each plaintiff's claim.

Either outcome is preferable to risking an appellate reversal after months or years of potentially

unnecessary, burdensome, and expensive effort by the parties and the Court.

For the reasons stated above and explained in more detail below, this case exemplifies the

circumstances in which certification under section 1292(d)(2) is appropriate. It is appropriate for

this Court to grant certification and to allow the Federal Circuit to decide for itself whether an

immediate interlocutory appeal is warranted. If the Court grants certification, both parties will

have the opportunity to present their arguments to the court of appeals, which may then exercise

its discretion to accept or to decline the appeal. *See* 28 U.S.C. § 1292(d)(2). Given the

importance of the question presented and the size of plaintiffs' claims, there is no reason to deny

the court of appeals the opportunity to consider that question. Further, it is appropriate to

suspend all proceedings in the case pending appeal, which would conserve the parties' and the

Court's resources.[2]

## ARGUMENT

### I.      Standard for Certification Under Section 1292(d)(2)

Section 1292(d) of Title 28 authorizes this Court to certify an order for immediate

interlocutory review by the Federal Circuit. The court of appeals may then exercise its discretion

whether to accept the appeal. In relevant part, section 1292(d)(2) provides:

---

[2] The Court recently denied as premature defendant's motion to suspend proceedings which defendant filed to permit time for it to receive the necessary authority to file this motion. Dkt. No. 123. Although defendant's prior motion to suspend proceedings was denied, defendant details further in its prior briefing the numerous reasons why suspension of proceedings pending appeal is appropriate, as also addressed below.

> [W]hen any judge of the United States Court of Federal Claims, in
> issuing an interlocutory order, includes in the order a statement
> that a controlling question of law is involved with respect to which
> there is a substantial ground for difference of opinion and that an
> immediate appeal from that order may materially advance the
> ultimate termination of the litigation, the United States Court of
> Appeals for the Federal Circuit may, in its discretion, permit an
> appeal to be taken from such order, if application is made to that
> Court within ten days after the entry of such order.

28 U.S.C. § 1292(d)(2).  Accordingly, this Court may certify for interlocutory review by the

court of appeals the Court's December 1, 2020 order by amending the order to state expressly

that (1) the order involves "a controlling question of law . . . with respect to which there is a

substantial ground for difference of opinion," and (2) "an immediate appeal from that order may

materially advance the ultimate termination of the litigation."  *Id*.

This Court has explained that section 1292(d)(2)'s "factors should be viewed together as

a unitary requirement so that a court may consider the probable gains and losses of certification

against proceeding with a full disposition of the case." *Ins. Co. of the W. v. United States*, No.

99-124C, 1999 WL 33604131, at \*2 (Fed. Cl. Dec. 10, 1999); *see also AT&T Co. v. United

States*, 33 Fed. Cl. 540, 541 (1995) (similar).  Whether to grant certification is entrusted to the

discretion of this Court. *Neb. Pub. Power Dist. v. United States*, 74 Fed. Cl. 762, 763 (2006).

Accordingly, this Court has certified a question for interlocutory appeal upon

determination that "much can be gained by having the court of appeals address the controlling

questions . . . on an interlocutory basis rather than at the conclusion of what could otherwise

prove to be a much protracted lawsuit." *AT&T*, 33 Fed. Cl. at 541; *see also Neb. Pub. Power*, 74

Fed. Cl. at 763 (certification can "avoid unnecessary delay and expense" (citing legislative

history of section 1292(d))).  The Court also may consider factors such as "[t]he difficulty and

general importance of the question presented, the probability of reversal, the significance of the

4

gains from reversal, and the hardship on the parties in their particular circumstances." 16

Charles Alan Wright *et al.*, *Fed. Prac. & Proc.* § 3930 (3d ed. Oct. 2020 update).

## II.      Certification Under Section 1292(d)(2) Is Warranted

The United States respectfully requests that the Court certify for immediate interlocutory

review the following question:  whether the government is liable for liquidated damages under

the FLSA when it complies with the Anti-Deficiency Act's command to defer payment of

Federal employees' wages during a lapse in appropriations.   As we explain below, that question

controls the remainder of this litigation;  there is substantial ground for difference of opinion on

this question of first impression;  and an immediate appeal would materially advance the ultimate

termination of the case.  Certification is therefore warranted, and for the same reasons, a

suspension of proceedings pending appeal is similarly warranted.

### A.      Whether the Government Is Liable For Liquidated Damages
####          Is A Controlling Question of Law On Which There Is
####          Substantial Grounds For Difference Of Opinion

Whether the government is liable for liquidated damages in these circumstances is plainly

the "controlling question of law" in this case.  As an initial matter, whether the Government's

conduct constituted a violation of the FLSA at all is a pure question of law, and its resolution

may control the outcome of this case: if the court of appeals were to agree that the Government

did not violate the FLSA, then plaintiffs' complaint fails to state a claim and must be dismissed,

terminating this litigation.   It is difficult to imagine a question more suitable for interlocutory

review under section 1292(d)(2).   *See Neb. Pub. Power*, 74 Fed. Cl. at 763 ("Questions [of law]

are controlling when they 'materially affect issues remaining to be decided in the trial court.'"

(quoting *Marriott Int'l Resorts, L.P. v. United States*, 63 Fed. Cl. 144, 145 (2004)).

5

In addition, the question whether the Government may be liable for liquidated damages, assuming the Government's conduct violated the FLSA, is also a controlling question of law within the meaning of section 1292(d)(2).  Although the Court has indicated that it may be premature to resolve plaintiffs' entitlement to liquidated damages on a motion to dismiss, the Government has serious arguments that, based on the facts recited on the face of plaintiffs' complaint, the Government acted in good faith as a matter of law.  *Cf. Palafox St. Assocs. v. United States*, 114 Fed. Cl. 773, 780 (2014) ("A complaint can also be dismissed under RCFC 12(b)(6) if it is clear from the face of the complaint that an affirmative defense exists.").  If the court of appeals were to agree with the Government on that question, that would likely resolve this litigation because plaintiffs were paid their accrued wages following the restoration of appropriations and, in the absence of any entitlement to liquidated damages, they will have failed to state a claim for relief.  And even if plaintiffs were to argue that some of their claims would remain in the absence of a claim for liquidated damages, resolution of the liquidated damages question would dramatically simplify any remaining litigation, which is all that is required for certification.  *See Marriott Int'l Resorts, L.P. v. United States*, 122 F. App'x 490, 491-92 (Fed. Cir. 2005) (unpublished) (accepting certification when, "although disposition of the issue would not dispose of the litigation . . . review of the issue might simplify the litigation"); *cf. Johnson v. Burken*, 930 F.2d 1202, 1205-06 (7th Cir. 1991) ("Controlling . . . means serious to the conduct of the litigation, either practically or legally. . . . [A] question is controlling, even though its decision might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants." (quotations omitted)).

There is also substantial ground for a difference of opinion regarding these questions. The Anti-Deficiency Act contains strict prohibitions related to the employment and payment of

6

the Federal workforce during a lapse in appropriations. It provides that, without a supporting

appropriation, Federal officers are prohibited from "mak[ing] or authoriz[ing] an expenditure,"

31 U.S.C. § 1341(a)(1), and that a Federal officer or employee "may not accept voluntary

services . . . or employ personal services exceeding that authorized by law except for

emergencies involving the safety of human life or the protection of property," *id*. § 1342. And in

2019, during the lapse in appropriations at issue in this case, Congress amended the statute to

provide explicit instruction regarding the payment of employees such as plaintiffs who are

required to work during a lapse. Those employees, the statute directs, "shall be paid for such

work, at the employee's standard rate of pay, at the earliest date possible after the lapse in

appropriations ends, regardless of scheduled pay dates, and subject to the enactment of

appropriations Acts ending the lapse." *Id*. § 1341(c)(2).

During and after the 2018-19 lapse in appropriations, Federal agencies were statutorily

obligated to make payments in accordance with that scheme, and Federal officials would have

been subject to administrative discipline and criminal penalties had they chosen to do otherwise.

There certainly is substantial ground for concluding that Congress, in enacting both that scheme

and the FLSA, did not intend to necessarily expose the federal government to liability under one

statute as the price of compliance with the other. Indeed, plaintiffs have identified no precedent

suggesting that any prompt payment requirement implicit in the FLSA could apply when a

different Federal statute mandates delayed payment, nor have they identified any other instance

in which Congress has made compliance with an unambiguous statutory requirement the basis of

liability under a different statute. And such a result would be particularly anomalous in this case,

given that the FLSA is silent on the question of when wage payments must be made and the

Anti-Deficiency Act's prohibitions are supported by criminal penalties.

7

In short, there is no indication anywhere in the text, context, or legislative history of either the FLSA or the Anti-Deficiency Act that Congress intended to present agency officials with the dilemma of having to violate one statute or the other. Nor is there any evidence that Congress believed that it was exposing the public fisc to this type of liability when it made the FLSA applicable to the federal government in 1974 or when it amended the Anti-Deficiency Act to specifically address the timing of employees' wage payments in 2019. Given the lack of evidence that Congress intended such a result, as well as the lack of precedent on the issue, there is at least a substantial ground for a difference of opinion about whether the government violates the FLSA when it makes wage payments in accordance with the Anti-Deficiency Act.

The grounds to support such a difference in opinion would exist even without reference to principles of sovereign immunity, but those principles only further underscore the force of the Government's position. It is axiomatic that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Athey v. United States*, 908 F.3d 696, 702–03 (Fed. Cir. 2018) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted)). The Federal Circuit in *Athey* explained that, as a corollary to this principle, a court must consider not only whether Congress has enacted a waiver of immunity, but also whether the waiver extends to particular forms of relief, including relief that would be available against a private party—in that case, the availability of interest. *See* 908 F.3d at 703 (stating that "the waiver [of sovereign immunity] as to interest must be separate from the waiver as to underlying liability" (citations omitted)). That mode of analysis accords with the Supreme Court's analysis in *Library of Congress v. Shaw*, 478 U.S. 310, 319 (1986), where the Court held that the fact that Title VII "contained language equating the liability of the United States for attorney's fees to that of a private person does not represent the requisite affirmative

8

congressional choice to waive" immunity for interest. *See also Emps. of the Dep't of Public Health & Welfare v. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 285-87 (1973) (holding that, in the absence of a clear statement of intent, Congress did not, in adding state hospitals to the FLSA's definition of "employer," make states liable for damages notwithstanding pre-existing language that established damages liability for employers).

Therefore, because the text of the FLSA does not speak to the question of when wage payments must be made and does not directly address the Federal Government's liability for damages for any delayed payments, principles of sovereign immunity dictate that courts should proceed with special caution before finding the Government liable in circumstances such as those in this case. And the need for such caution additionally highlights that there is a substantial ground for a difference of opinion on the questions presented by this case.

Moreover, the government's arguments apply with particular force to the issue of whether the government may be held liable for liquidated damages in this case. The FLSA provides that, if an "employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof[.]" 29 U.S.C. § 260. For all of the reasons discussed above—and, in particular, Congress's explicit recognition during the 2019 lapse in appropriations that the Anti-Deficiency Act required the deferral of wage payments until after the restoration of appropriations—there is substantial ground to believe that, at the absolute least, the Government was acting with the requisite good faith and on reasonable grounds when it paid plaintiffs' wages in accordance with that statutory command.

9

Finally, as this Court has previously recognized, the issue of whether the government

may be liable in these circumstances is "one of first impression for this court." *Martin v. United*

*States*, 117 Fed. Cl. 611, 616 (2014).  Since *Martin* was decided, neither the Federal Circuit nor

any other court has weighed in on this question to provide additional guidance.  In light of the

Government's substantial arguments, and given the lack of controlling case law, it is plain that

there is room for a difference of opinion, notwithstanding the fact that the Court has carefully

considered the issue and determined that the Government may face liability.  *Cf. Lea v. United*

*States*, No. 16-43C, 2017 WL 5929229, at *3 (Fed. Cl. Dec. 1, 2017) ("The Court reached its

decision after careful consideration of the legal issues presented and the parties' arguments, and

is convinced that its decision is correct.  Nonetheless, questions of regulatory interpretation

presented in this case involve issues of first impression.").

## B.    Immediate Appeal Would Materially Advance The Ultimate Termination Of The Litigation

It would materially advance the ultimate termination of this litigation to obtain a ruling

from the Federal Circuit on whether the Government may be liable in these circumstances.  The

"focus" of this inquiry "is, in large part[,] on considerations of 'judicial economy' and the need

to avoid 'unnecessary delay and expense' and 'piecemeal litigation.'"  *Fairholme Funds, Inc. v.*

*United States*, 147 Fed. Cl. 126, 130 (Fed. Cl. 2020) (quoting *Coast Fed. Bank, FSB v. United*

*States*, 49 Fed. Cl. 11, 14 (2001)).

Immediate interlocutory appeal would permit the parties and the Court to obtain an

authoritative determination of the legal viability of plaintiffs' claims before embarking on the

time consuming and expensive process of litigating those claims to judgment.  If the Federal

Circuit reverses, this Court's certification decision will have aided the parties and the Court by

avoiding the expense and delay of unnecessary proceedings.  If the Federal Circuit affirms, by

contrast, the path forward will be clear: the Court will have obtained confirmation of its legal ruling on the Government's dispositive motion, possibly narrowed any disputes over the appropriate scope of discovery, and cleared the way for additional proceedings to determine the relevant facts. Either outcome is preferable to risking an appellate reversal after months or years of unnecessary effort, expense, and inconvenience to the parties and the Court. *See Lummi Tribe of the Lummi Rsrv. v. United States*, 870 F.3d 1313, 1315 (Fed. Cir. 2017) ("This court granted the government's petition for interlocutory appeal to ensure that the Court of Federal Claims is the court of proper jurisdiction before requiring it and the parties to undergo extensive unnecessary proceedings." (citing to prior proceedings)); *Colonial Chevrolet Co. v. United States*, 106 Fed. Cl. 619, 621 (2012) ("Should the Appeals Court agree with the Government that plaintiffs have not presented sufficient legal arguments to support their unique takings theory, an appellate decision on point could preempt broad discovery by large numbers of plaintiffs.").

Because 12 of the related cases are proceeding under the FLSA, as evidenced by the multitude of filings and attempts to intervene in this case, there will necessarily be extensive proceedings in all cases before liability can be determined and, if necessary, any damages can be assessed. Initially, there are significant questions that affect all cases surrounding the scope of any collective action; the validity of signatures on consent forms; the Government's current inability to identify all individuals in each case who have filed consent forms or to confirm Government employment; the requirement that plaintiffs eliminate any duplicate plaintiffs, both within each case and between cases; the difficulties in crafting and issuing any notice should the Court require it, including difficulties ensuring that notice in one case is not sent to any currently-represented plaintiff in another case; and the necessity of proceeding in a consolidated fashion considering the interrelatedness of the cases. The parties must brief the three year statute

of limitations and whether the Government's conduct was willful. And regardless of whether the Government loses on the question of willfulness at the summary judgment phase, before any final judgment can be issued, there will be extensive and fact-intensive proceedings to determine the hours worked by each of the thousands of plaintiffs whose wages were delayed, and then additional time and expense in calculating any damages owed to each plaintiffs, including the hiring of consultants.

The potential benefits of interlocutory appeal in this case are thrown into stark relief by considering the proceedings in *Martin*, which involves only a single case, a time period of only five days, and approximately 50,000 fewer plaintiffs than the related cases in their current posture. Despite the relative simplicity of *Martin* compared to the proceedings in these related cases, proceedings in this Court are continuing more than six years after the Court denied the Government's motion to dismiss in *Martin*, and have already consumed an inordinate share of the Court's and the parties' resources. These cases—whether handled individually or in some consolidated fashion—will impose an exponentially greater burden.

Nor will any party be prejudiced by this Court's certifying its decision. Plaintiffs do not (and could not) seek any form of provisional or temporary relief in this Court such that an immediate appeal would result in an injustice. Instead, plaintiffs seek only monetary compensation for past alleged harms; if they ultimately prevail in the litigation, they will be entitled to full compensation for those harms. Moreover, all individuals who have joined the case have already filed consent to join forms, and thus the existing plaintiffs' claims are perfected. Accordingly, there is no reason for the parties and the Court to undertake years of additional litigation and expend countless resources without first permitting the Federal Circuit to consider the threshold legal question of whether the Government may be liable for damages;

12

moreover, the Court should suspend all further proceedings pending appeal, including our filing answers to the complaints, joint status reports regarding consolidation, responses or replies to any pending motions, and any further proceedings that would regularly follow in accordance with the Court's rules.

## CONCLUSION

The Court should grant the United States' motion to certify for interlocutory appeal the Court's December 1, 2020 order and amend the order to include the following express finding under 28 U.S.C. § 1292(d)(2):

> The Court finds that this order involves a controlling question of law with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

In addition, the Court should suspend all further proceedings pending appeal, including our filing answers to the complaints, joint status reports regarding consolidation, responses or replies to any pending motions, and any further proceedings.

Respectfully submitted,

JOHN V. COGHLAN
Deputy Assistant Attorney General of the
Federal Programs Branch, with delegated
duties of Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

s/Erin K. Murdock-Park
ERIN K. MURDOCK-PARK
ANN C. MOTTO
VIJAYA S. SURAMPUDI
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 616-3753
erin.k.murdock-park@usdoj.gov

Dated: January 19, 2021                    Attorneys for Defendant

14