# United States Court of Appeals
# for the Federal Circuit

---

**ELEAZAR AVALOS, JAMES DAVIS,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2021-2008

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00048-PEC, Judge Patricia E. Campbell-Smith.

--------------------------------------------------

**L. KEVIN ARNOLD, MARTIN LEE, MARK MUNOZ, MATTHEW PERRY, AARON SAVAGE, JENNIFER TAYLOR, RALPH FULVIO, DAVID KIRSH, ROBERT RIGGS,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2021-2009

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00059-PEC, Judge Patricia E. Campbell-Smith.

---------------------------------------------------

**ROBERTO HERNANDEZ, JOSEPH QUINTANAR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*
_____

2021-2010
_____

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00063-PEC, Judge Patricia E. Campbell-Smith.

---------------------------------------------------

**LORI ANELLO, KARL BLACK, GEORGE CLARY, WILLIAM DENELL, JUSTIN GROSSNICKLE, ERIC INKROTE, TIMOTHY MCGREW, MARK MILLER, DAVID NALBORCZYK, MARTIN NEAL, JR., LUKE PALMER, THOMAS RHINEHART, JR., IVAN TODD,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

———————————————

2021-2011

———————————————

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00118-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**BRIAN RICHMOND, ADAM SMITH, THOMAS MOORE, CHRIS BARRETT, WILLIAM ADAMS, KELLY BUTTERBAUGH, DAN ERZAL, BRIAN W. KLINE, KEVIN J. SHEEHAN, JASON KARLHEIM, CHARLES PINNIZZOTTO, JASON DIGNAN, MATHEW BECK, STEPHEN SHRIFT, JAMES BIANCONI, CHRISTOPHER GRAFTON, JESSE CARTER, MICHAEL CRUZ, CARL WARNER, BRIAN OWENS, BRIAN MUELLER, BRYAN BOWER, COREY TRAMMEL, JAMES KIRKLAND, KIMBERLY BUSH, BOBBY MARBURGER, RODNEY ATKINS, LEONEL HERNANDEZ, JOSEPH AUGUSTA, EDWARD WATT,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

———————————————

2021-2012

———————————————

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00161-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**JUSTIN TAROVISKY, GRAYSON SHARP, SANDRA PARR, JUSTIN BIEGER, JAMES BRATTON, WILLIAM FROST, STEVE GLASER, AARON HARDIN, STUART HILLENBRAND, JOSEPH KARWOSKI, PATRICK RICHOUX, DERRECK ROOT, CARLOS SHANNON, SHANNON SWAGGERTY, GEOFFRY WELLEIN, BECKY WHITE, TAMMY WILSON,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*
_____

2021-2014
_____

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00004-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**QUENTIN BACA, LEPHAS BAILEY, CHRISTOPHER BALLESTER, KEVIN BEINE, DAVID BELL, RICHARD BLAM, MAXIMILIAN CRAWFORD, MATTHEW CRUMRINE, JOHN DEWEY, JEFFREY DIAMOND,**
*Plaintiffs-Appellees*

**v.**



**UNITED STATES,**
*Defendant-Appellant*

_____

2021-2015

_____

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00213-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**DAVID JONES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

_____

2021-2016

_____

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00257-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**TONY ROWE, ALIEU JALLOW, KARLETTA BAHE, JOHNNY DURANT, JESSE A. MCKAY, III, GEORGE DEMARCE, JACQUIE DEMARCE,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*
_____

2021-2017
_____

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00067-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**D. P., T. S., J. V.,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*
_____

2021-2018
_____

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00054-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**PLAINTIFF NO. 1, PLAINTIFF NO. 2, PLAINTIFF NO. 3, PLAINTIFF NO. 4,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

————————————

2021-2019

————————————

Appeal from the United States Court of Federal Claims
in No. 1:19-cv-00094-PEC, Judge Patricia E. Campbell-
Smith.

-------------------------------------------------

**I. P., A. C., S. W., D. W., P. V., M. R., R. C., K. W., B. G.,
R. H., INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED,**
*Plaintiffs- Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

————————————

2021-2020

————————————

Appeal from the United States Court of Federal Claims
in No. 1:19-cv-00095-PEC, Judge Patricia E. Campbell-
Smith.

————————————

Decided:  November 30, 2022

————————————

LEON DAYAN, Bredhoff & Kaiser, PLLC, Washington,
DC, argued for all plaintiffs-appellees.  Plaintiffs-appellees
Eleazar Avalos, James Davis also represented by JOSHUA

A. SEGAL; ALLISON GILES, JULIE M. WILSON, National Treasury Employees Union, Washington, DC.

JACOB Y. STATMAN, Snider & Associates, LLC, Baltimore, MD, for plaintiffs-appellees L. Kevin Arnold, Ralph Fulvio, David Kirsh, Martin Lee, Mark Munoz, Matthew Perry, Robert Riggs, Aaron Savage, Jennifer Taylor. Also represented by JASON IAN WEISBROT.

WILLIAM CLIFTON ALEXANDER, Anderson Alexander, PLLC, Corpus Christi, TX, for plaintiffs-appellees Roberto Hernandez, Joseph Quintanar. Also represented by ALAN CLIFTON GORDON.

THEODORE REID COPLOFF, McGillivary Steele Elkin LLP, Washington, DC, for plaintiffs-appellees Lori Anello, Karl Black, George Clary, William Denell, Justin Grossnickle, Eric Inkrote, Timothy McGrew, Mark Miller, David Nalborczyk, Martin Neal, Jr., Luke Palmer, Thomas Rhinehart, Jr., Ivan Todd. Also represented by SARAH BLOCK, GREGORY K. MCGILLIVARY.

JACK K. WHITEHEAD, JR., Whitehead Law Firm, Baton Rouge, LA, for plaintiffs-appellees William Adams, Rodney Atkins, Joseph Augusta, Chris Barrett, Mathew Beck, James Bianconi, Bryan Bower, Kimberly Bush, Kelly Butterbaugh, Jesse Carter, Michael Cruz, Jason Dignan, Dan Erzal, Christopher Grafton, Leonel Hernandez, Jason Karlheim, James Kirkland, Brian W. Kline, Bobby Marburger, Thomas Moore, Brian Mueller, Brian Owens, Charles Pinnizzotto, Brian Richmond, Kevin J. Sheehan, Stephen Shrift, Adam Smith, Corey Trammel, Carl Warner, Edward Watt.

HEIDI R. BURAKIEWICZ, Kalijarvi, Chuzi, Newman & Fitch, PC, Washington, DC, for plaintiffs-appellees Justin Bieger, James Bratton, William Frost, Steve Glaser, Aaron Hardin, Stuart Hillenbrand, Joseph Karwoski, Sandra

Parr, Patrick Richoux, Derreck Root, Carlos Shannon, Grayson Sharp, Shannon Swaggerty, Justin Tarovisky, Geoffry Wellein, Becky White, Tammy Wilson. Also represented by DONALD ROBERT DEPRIEST; DENISE DUARTE ALVES, American Federation of Government Employees, Washington, DC.

MOLLY A. ELKIN, McGillivary Steele Elkin LLP, Washington, DC, for plaintiffs-appellees Quentin Baca, Lephas Bailey, Christopher Ballester, Kevin Beine, David Bell, Richard Blam, Maximilian Crawford, Matthew Crumrine, John Dewey, Jeffrey Diamond. Also represented by GREGORY K. MCGILLIVARY.

JOSH SANFORD, Sanford Law Firm, PLLC, Little Rock, AR, for plaintiff-appellee David Jones.

MARSHALL RAY, Law Offices of Marshall J. Ray, LLC, Albuquerque, NM, for plaintiffs-appellees Karletta Bahe, George Demarce, Jacquie Demarce, Johnny Durant, Alieu Jallow, Jesse A. McKay, III, Tony Rowe. Also represented by JASON JON LEWIS, Law Office of Jason J. Lewis LLC, Albuquerque, NM.

NICHOLAS WIECZOREK, Clark Hill PLLC, Las Vegas, NV, for plaintiffs-appellees D. P., T. S., J. V.

JULES BERNSTEIN, Bernstein & Lipsett PC, Washington, DC, for plaintiffs-appellees Plaintiff No. 1, Plaintiff No. 2, Plaintiff No. 3, Plaintiff No. 4. Also represented by LINDA LIPSETT; DANIEL M. ROSENTHAL, BRITA C. ZACEK, James & Hoffman, P.C., Washington, DC.

LAUREN REZNICK, Borrelli & Associates, PLLC, Garden City, NY, for plaintiffs-appellees A. C., R. C., B. G., R. H., I. P., M. R., D. W., K. W., S. W., P. V.

MARK B. STERN, Appellate Staff, Civil Division, United

States Department of Justice, Washington, DC, argued for defendant-appellant.    Also represented by BRIAN M. BOYNTON, SEAN JANDA, MICHAEL SHIH.

—————————————

Before REYNA, LINN, and HUGHES, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HUGHES.

Dissenting opinion filed by *Circuit Judge* REYNA.

HUGHES, *Circuit Judge*.

This interlocutory appeal addresses whether the government violates the Fair Labor Standards Act by not paying federal employees who work during a government shutdown until after the lapse in appropriations has been resolved. The Court of Federal Claims determined that the employees had established a prima facie case of an FLSA violation even though the Anti-Deficiency Act legally barred the government from making payments during the shutdown. Because we determine that the government did not violate the FLSA's timely payment obligation as a matter of law, we reverse.

I

From December 22, 2018 to January 25, 2019, the federal government partially shut down because of a lapse in appropriations. Plaintiffs-Appellees continued to work despite the shutdown because of their status as "excepted employees"—employees who work on "emergencies involving the safety of human life or the protection of property" and whom the government can "require[] to perform work during a covered lapse in appropriations." 31 U.S.C. §§ 1341(c)(2), 1342. During this shutdown period, the government was barred from paying wages to excepted employees by the Anti-Deficiency Act, which prohibits the government from "authoriz[ing] an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." 31 U.S.C.

§ 1341(a)(1)(A). The parties do not dispute that the government paid Plaintiffs-Appellees their accrued wages after the partial shutdown ended.

Plaintiffs-Appellees sued the government in the United States Court of Federal Claims, alleging that the government violated the Fair Labor Standards Act (FLSA) "by failing to timely pay their earned overtime and regular wages during the partial government shutdown." Appx12. Plaintiffs-Appellees sought liquidated damages under the FLSA, asserting that the government failed to make timely payments when it missed three scheduled pay dates during the partial shutdown: December 28, 2018; January 10, 2019; and January 24, 2019. Plaintiffs-Appellees' Br. 8; *see* 29 U.S.C. § 260. Under the FLSA, any employer who does not timely pay minimum or overtime wages is liable for liquidated damages equal to the amount of the untimely paid wages. *See* 29 U.S.C. § 216(b). But the Court of Federal Claims has the discretion to award no liquidated damages "if the employer shows . . . that the act or omission giving rise to [the FLSA] action was in good faith" and was based on "reasonable grounds for believing that [the] act was not a violation of the" Act. *Id.* § 260.

The government moved to dismiss Plaintiffs-Appellees' complaint under Court of Federal Claims Rule 12(b)(6) for failing to state a claim. The government argued that it "cannot be held liable for violating its obligations under the FLSA" because the Anti-Deficiency Act prohibited the government from paying Plaintiffs-Appellees during the partial shutdown. Appx21. The Court of Federal Claims denied the government's motion to dismiss, reasoning that Plaintiffs-Appellees "had 'alleged that [the government] had failed to pay wages' on [Plaintiffs-Appellees'] 'next regularly scheduled payday'" and therefore stated a claim for relief under the FLSA. *Avalos v. United States*, 151 Fed. Cl. 380, 388 (2020) (quoting *Martin v. United States*, 130 Fed. Cl. 578, 584 (2017)). The trial court relied on its decision in *Martin*, in which it determined that "the appropriate way

to reconcile [the Anti-Deficiency Act and the FLSA] is not to cancel the defendant's obligation to pay its employees" under the FLSA, but to "require that [the] defendant demonstrate a good faith belief, based on reasonable grounds, that its actions were appropriate" per 29 U.S.C. § 260. *Martin*, 130 Fed. Cl. at 584. The trial court then granted the government's motion to stay proceedings and certify an interlocutory appeal to address the question of "whether [the] defendant is liable for liquidated damages under the FLSA when [the] defendant complies with the Anti-Deficiency Act's command to defer payment of Federal employees' wages during a lapse in appropriations." Appx297 (cleaned up). The government appeals. We have jurisdiction under 28 U.S.C. § 1292(d)(2).

## II

We review the Court of Federal Claims' legal conclusions de novo and its factual findings for clear error. *Adams v. United States*, 350 F.3d 1216, 1221 (Fed. Cir. 2003).

## A

Congress passed an early version of the Anti-Deficiency Act in 1870, making it unlawful "for any department of the government to expend in any one fiscal year any sum in excess of appropriations made by Congress for that fiscal year, or to involve the government in any contract for the future payment of money in excess of such appropriations." Act of July 12, 1870, ch. 251, § 7, 16 Stat. 230, 251. In 1884, Congress developed this prohibition further, mandating that "no Department or officer of the United States shall accept voluntary service for the Government or employ personal service in excess of that authorized by law except in cases of sudden emergency involving the loss of human life or the destruction of property." Act of May 1, 1884, ch. 37, 23 Stat. 15, 17.

These provisions took on more life over the subsequent years: In 1905, Congress required appropriations to be

apportioned monthly "to prevent undue expenditures in one portion of the year that may require deficiency or additional appropriations to complete the service of the fiscal year." Act of Mar. 3, 1905, ch. 1484, § 4, 33 Stat. 1214, 1257–58. And in 1906, Congress mandated that "all such apportionments shall be adhered to and shall not be waived or modified except upon the happening of some extraordinary emergency or unusual circumstance which could not be anticipated at the time of making such apportionment" and subjected any person who violated the provision to removal from office and a potential fine, imprisonment, or both. Act of Feb. 27, 1906, ch. 510, § 3, 34 Stat. 27, 49.

Congress continued to amend the Anti-Deficiency Act over the next 100 years. In its current form, the Act prohibits "an officer or employee" of the United States government from "mak[ing] or authoriz[ing] an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a)(1). The Act further prohibits officers and employees from "accept[ing] voluntary services . . . or employ[ing] personal services exceeding that authorized by law except for emergencies involving the safety of human life or the protection of property." *Id.* § 1342. The Anti-Deficiency Act clarifies that "each excepted employee who is required to perform work during a covered lapse in appropriations shall be paid for such work . . . at the earliest date possible after the lapse in appropriations ends, regardless of scheduled pay dates, and subject to the enactment of appropriations Acts ending the lapse." *Id.* § 1341(c)(2).

An officer or employee that violates these prohibitions receives "appropriate administrative discipline," which could include "suspension from duty without pay or removal from office." *Id.* § 1349. Further, if the violation is knowing and willful, the offending officer or employee is subject to a criminal fine "not more than $5,000," imprisonment "for not more than 2 years," or both. *Id.* § 1350.

### B

Congress passed the FLSA in 1938 after finding "that the existence . . . of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers" causes certain undesirable outcomes. Fair Labor Standards Act of 1938, Pub. L. No. 75-718, § 2, 52 Stat. 1060, 1060. Relevant to this appeal, the 1938 version of the FLSA required "[e]very employer [to] pay to each of his employees who is engaged in commerce or in the production of goods for commerce" a minimum wage. *Id.* § 6, 52 Stat. 1062. It also required employers to pay employees one-and-a-half times the employees' regular rate "for a workweek longer than forty hours." *Id.* § 7, 52 Stat. 1063. The current version of the FLSA contains substantially identical requirements. *See* 29 U.S.C. §§ 206, 207.

Initially, the FLSA excluded the United States from its definition of "employer," Pub. L. No. 75-718, § 2, 52 Stat. 1060, and excluded individuals "employed in a bona fide executive, administrative, professional, or local retailing capacity" from the minimum wage and overtime requirements, *id.* § 13, 52 Stat. 1067. But in 1974, Congress amended the FLSA's definition of "employer" to remove the language excluding the United States, and it amended the FLSA's definition of "employee" to expressly include "an individual employed by a public agency" of "the Government of the United States," subject to certain conditions. Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, § 6, 88 Stat. 55, 58–60.

### III

The central question in this appeal is how the Anti-Deficiency Act's prohibition on government spending during a partial shutdown coexists with the FLSA's seemingly contradictory timely payment obligation. The government argues that the FLSA's timely payment obligation "does not require the impossible" and considers what is "convenient

or practicable under the circumstances." Defendant-Appellant's Br. 16 (quoting *Walling v. Harnischfeger Corp.*, 325 U.S. 427, 432–33 (1945)). The government therefore asserts that it did not violate the FLSA's timely payment obligation because it paid excepted employees as soon as possible and practicable under the circumstances—when the Anti-Deficiency Act legally allowed the government to make those payments. *Id.* at 15.

Plaintiffs-Appellees argue that the FLSA's timely payment obligation is more rigid, requiring "employers to pay statutorily mandated wages *promptly*—that is, on the first regular, recurring payday after the amount due is ascertainable." Plaintiffs-Appellees' Br. 14–15. Plaintiffs-Appellees argue that the government should pay employees both wages and liquidated damages when a partial shutdown ends in recognition of "the government's own delay in meeting its obligations" under the FLSA. *Id.* at 12.

We hold that the FLSA's timely payment obligation considers the circumstances of payment and that, as a matter of law, the government does not violate this obligation when it complies with the Anti-Deficiency Act by withholding payment during a lapse in appropriations.

We begin with the text of the FLSA. *United States v. Gonzales*, 520 U.S. 1, 4 (1997). The FLSA does not address whether the government violates the law by not paying employees on their regularly scheduled pay date during a partial shutdown. In fact, the FLSA does not specify at all when an employer must pay wages to its employees. It merely requires that "[e]very employer *shall pay* to each of his employees who in any workweek is engaged in commerce" a minimum wage, with no explicit mention of *when* the employer must make this payment. *See* 29 U.S.C. § 206 (emphasis added).

But an employer must still pay its employees in a timely manner. The Supreme Court has explained that the FLSA's liquidated-damages provision, 29 U.S.C. § 216(b),

"constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living . . . that double payment must be made in the event of delay . . . ." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).

Courts have interpreted the FLSA's implicit timely payment obligation to ordinarily require employers to pay wages by "the employee's regular payday." *Biggs v. Wilson*, 1 F.3d 1537, 1541 (9th Cir. 1993); *see also, e.g.*, *Roland Elec. Co. v. Black*, 163 F.2d 417, 421 (4th Cir. 1947) ("[I]f [an employer] fails to pay overtime compensation promptly and when due on any regular payment date, the statutory action for the unpaid minimum and liquidated damages given under Section 16(b) immediately arises in favor of the aggrieved employee."); *Atl. Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1944) ("[I]f an employer on any regular payment date fails to pay the full amount of the minimum wages and overtime compensation due an employee, there immediately arises an obligation upon the employer to pay the employee . . . liquidated damages.").

But there are exceptions to this general rule. The Supreme Court has recognized that—at least for the overtime provision, 29 U.S.C. § 207(a)—failing to pay on a regular pay date is not a per se violation of the FLSA. *Walling*, 325 U.S. at 432–33. For example, the employer in *Walling* did not violate the FLSA when it did not pay overtime wages on its employees' regular pay date because "the correct overtime compensation [could not] be determined until some time after the regular pay period." *Id.* at 432. The Supreme Court clarified that the FLSA "does not require the impossible" but requires payment only "as soon as convenient or practicable under the circumstances." *Id.* at 432–33.

The Second Circuit has also suggested that, while contractual pay dates can be relevant and probative to this inquiry, "what constitutes timely payment must be determined by objective standards—and not solely by

reference to the parties' contractual arrangements." *Rogers v. City of Troy*, 148 F.3d 52, 57 & n.4 (2d Cir. 1998). Agency interpretation of the statute arrives at the same conclusion: The Department of Labor advises employers that "compensation due [to] an employee must *ordinarily* be made at the regular payday for the workweek." U.S. Dep't of Labor, Wage and Hour Div., Field Operations Handbook § 30b04 (2016) (emphasis added).[1]

Because the FLSA does not explicitly address whether paying excepted employees immediately after a lapse in appropriations ends is timely, we turn to canons of statutory construction to aid our interpretation. *See Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)). "When confronted with two Acts of Congress allegedly touching on the same topic, [courts are] not at 'liberty to pick and choose among congressional enactments' and must instead strive 'to give effect to both.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (citation omitted). Plaintiffs-Appellees suggest that we can give effect to both the Anti-Deficiency Act and the FLSA because they "do not conflict." Plaintiffs-Appellees' Br. 12. According to Plaintiffs-Appellees, "once a shutdown ends, the

---

[1]    As the government notes, "Department of Labor guidance is not directly applicable to federal employees like [the] plaintiffs, for whom the FLSA is implemented by the Office of Personnel Management." Defendant-Appellant's Br. 4 n.1 (citing 5 U.S.C. 204(f); 5 C.F.R. pt. 551). But, in general, Congress has advised the Office of Personnel Management to "administer the provisions of law in such a manner as to assure consistency with the meaning, scope, and application [of] rulings, regulations, interpretations, and opinions of the Secretary of Labor which are applicable in other sectors of the economy." H.R. Rep. No. 93-913, at 28 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 2811, 2837.

government can act in a way that effectuates the purposes of both the FLSA and the [Anti-Deficiency Act] by compensating its employees, pursuant to the FLSA's liquidated damages provision, for the government's own delay in meeting its obligations to them." Plaintiffs-Appellees' Br. 12. But this interpretation *would* have us create a conflict between the two statutes by holding that the Anti-Deficiency Act forbids, but the FLSA simultaneously requires, payment during a lapse in appropriations. If we were to adopt Plaintiffs-Appellees' proposed interpretation, we would be forcing the government to choose between a violation of the Anti-Deficiency Act or the FLSA. This is an absurd result that we should avoid, if possible. *See Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940).

"[I]n approaching a claimed conflict, we come armed with the 'strong[] presum[ption]' . . . that 'Congress will specifically address' preexisting law when it wishes to suspend its normal operations in a later statute." *Epic*, 138 S. Ct. at 1624 (quoting *United States v. Fausto*, 484 U.S. 439, 453 (1988)). We disfavor repeals by implication, "particularly . . . when, as here, we are urged to find that a specific statute . . . has been superseded by a more general one." *Sw. Marine of S.F., Inc. v. United States*, 896 F.2d 532, 533 (Fed. Cir. 1990). Normally, "a specific statute controls over a general one." *Bulova Watch Co. v. United States*, 365 U.S. 753, 758 (1961).

The Anti-Deficiency Act is more specific than the FLSA. The Anti-Deficiency Act explicitly forbids the government from making expenditures during a lapse in appropriations and further specifies when the government must pay excepted employees for work performed during a partial shutdown, 31 U.S.C. § 1341(a)(1), (c)(2), whereas the FLSA discusses the much broader topic of general payment requirements for all employers, 29 U.S.C. §§ 206, 207. And the FLSA does not explicitly discuss when an employer must make these payments; it merely implies that payment must be timely under the circumstances. *See*

*Brooklyn Sav. Bank*, 324 U.S. at 707; *Walling*, 325 U.S. at 433.

Further, some form of the Anti-Deficiency Act had existed for nearly 70 years before Congress passed the FLSA, and for over 100 years by the time Congress extended the FLSA's protections to federal government employees. *See supra* Section II. If Congress intended to upend or modify the Anti-Deficiency Act's long-standing prohibition on making expenditures for which Congress has not apportioned funds, it would have done so explicitly. "A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow." *Epic*, 138 S. Ct. at 1624 (cleaned up). Plaintiffs-Appellees have not shown a clearly expressed intention; instead, they rely on judicial opinions that interpret an implicit obligation in the context of distinct fact patterns. *See* Plaintiffs-Appellees' Br. 16–17 (collecting and discussing cases). Plaintiffs-Appellees have not otherwise shown why a later-enacted, more general statute should supersede a long-standing, specific one.

"[W]here two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018 (1984) (internal quotation marks omitted). We conclude that Congress did not intend for the FLSA to overturn, conflict with, or supersede the Anti-Deficiency Act's prohibition on making expenditures during a lapse in appropriations. Rather, Congress intended for the two statutes to coexist in the following manner: The FLSA requires employers to pay their employees as soon as practicable under the circumstances. *Walling*, 325 U.S. at 433. Paying federal government wages during a lapse in appropriations is not practicable because the government would violate the Anti-Deficiency Act and could incur civil and criminal liability by making those expenditures. Therefore, the

federal government timely pays wages, per the FLSA, when it pays its employees at the earliest date possible after the lapse in appropriations ends.

Our holding does not create a "moving target" as to "when the employee actually gets paid." *Biggs*, 1 F.3d at 1540. Indeed, the Anti-Deficiency Act expressly addresses when payment should be made following a lapse in appropriations: "the earliest date possible after the lapse in appropriations ends." 31 U.S.C. § 1341(c)(2). This effectuates the implicit timely payment requirement of the FLSA and relieves "employees, employers, and courts alike [from] guess[ing] when 'late payment' becomes 'nonpayment' in order to determine whether the statute of limitations has begun to run, the amount of unpaid wages and liquidated damages to be awarded, and how much prejudgment interest has been accrued." *Biggs*, 1 F.3d at 1540.

Finally, we note that the cases on which Plaintiffs-Appellees rely are distinguishable. Many of these cases "involved substantial delays in payment, and—more important[ly]—the practices disapproved of resulted in evasions of the minimum wage and overtime provisions of the FLSA." *Rogers*, 148 F.3d at 56 (discussing *Brooklyn Sav. Bank*, 324 U.S. 697, which involved a two-year delay; *Calderon v. Witvoet*, 999 F.2d 1101 (7th Cir. 1993), which involved a five-year delay; and *United States v. Klinghoffer Brothers Realty Corp.*, 285 F.2d 487 (2d Cir. 1960), which involved a one-year delay); *see* Plaintiffs-Appellees' Br. 16–17, 29 (discussing the same cases). Here, the government paid Plaintiffs-Appellees immediately after the one-month shutdown ended.

*Brooklyn Savings Bank v. O'Neil* is particularly distinguishable, even beyond the substantial delays and attempts to evade the FLSA's requirements that are present in that case. The employees in *Brooklyn Savings* accepted overdue minimum and overtime wages from their employers and signed contracts releasing their employers from

liability for FLSA claims. 324 U.S. at 699–702. The Supreme Court held that employees cannot waive their right to minimum wages, overtime wages, or liquidated damages under the FLSA. *Id.* at 706–07. The Court found support in the "Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living . . . that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being." *Id.* at 707.

The Court in *Brooklyn Savings* analyzed whether "a statutory right conferred on a private party, but affecting the public interest, may . . . be waived or released if such waiver or release contravenes the statutory policy." *Id.* at 704. That issue is not relevant here; this appeal does not involve contractual waiver or other similar circumstances. In fact, the hierarchy of competing legal interests in this appeal is entirely different than that in *Brooklyn Savings*. There, the Court interpreted private contracts in light of a superior federal statute: the FLSA. In contrast, this appeal turns on how we interpret the FLSA in light of an even more established and more specific federal statute: the Anti-Deficiency Act. Our interpretation relies on well-established canons of construction to avoid a conflict between these two statutes. And we find no indication that Congress intended to create such a conflict—much less the "clearly expressed congressional intent[]" that caselaw requires, *Epic*, 138 S. Ct. at 1624.

## IV

Because the government does not violate the FLSA when it pays excepted employees for work performed during a government shutdown at the earliest date possible after a lapse in appropriations ends, we reverse the Court of Federal Claims' decision denying the government's motion to dismiss for failure to state a claim, and we remand

22                                        AVALOS v. US

for the court to enter judgment consistent with this opin-
ion.

## REVERSED AND REMANDED

### Costs

No costs.

# United States Court of Appeals for the Federal Circuit

---

**ELEAZAR AVALOS, JAMES DAVIS,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2021-2008

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00048-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**L. KEVIN ARNOLD, MARTIN LEE, MARK MUNOZ, MATTHEW PERRY, AARON SAVAGE, JENNIFER TAYLOR, RALPH FULVIO, DAVID KIRSH, ROBERT RIGGS,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2021-2009

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00059-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**ROBERTO HERNANDEZ, JOSEPH QUINTANAR, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*
_____

2021-2010
_____

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00063-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**LORI ANELLO, KARL BLACK, GEORGE CLARY, WILLIAM DENELL, JUSTIN GROSSNICKLE, ERIC INKROTE, TIMOTHY MCGREW, MARK MILLER, DAVID NALBORCZYK, MARTIN NEAL, JR., LUKE PALMER, THOMAS RHINEHART, JR., IVAN TODD,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

———————————————

2021-2011

———————————————

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00118-PEC, Judge Patricia E. Campbell-Smith.

------------------------------------------------

**BRIAN RICHMOND, ADAM SMITH, THOMAS MOORE, CHRIS BARRETT, WILLIAM ADAMS, KELLY BUTTERBAUGH, DAN ERZAL, BRIAN W. KLINE, KEVIN J. SHEEHAN, JASON KARLHEIM, CHARLES PINNIZZOTTO, JASON DIGNAN, MATHEW BECK, STEPHEN SHRIFT, JAMES BIANCONI, CHRISTOPHER GRAFTON, JESSE CARTER, MICHAEL CRUZ, CARL WARNER, BRIAN OWENS, BRIAN MUELLER, BRYAN BOWER, COREY TRAMMEL, JAMES KIRKLAND, KIMBERLY BUSH, BOBBY MARBURGER, RODNEY ATKINS, LEONEL HERNANDEZ, JOSEPH AUGUSTA, EDWARD WATT,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

———————————————

2021-2012

———————————————

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00161-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**JUSTIN TAROVISKY, GRAYSON SHARP, SANDRA PARR, JUSTIN BIEGER, JAMES BRATTON, WILLIAM FROST, STEVE GLASER, AARON HARDIN, STUART HILLENBRAND, JOSEPH KARWOSKI, PATRICK RICHOUX, DERRECK ROOT, CARLOS SHANNON, SHANNON SWAGGERTY, GEOFFRY WELLEIN, BECKY WHITE, TAMMY WILSON,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*
_____

2021-2014
_____

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00004-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**QUENTIN BACA, LEPHAS BAILEY, CHRISTOPHER BALLESTER, KEVIN BEINE, DAVID BELL, RICHARD BLAM, MAXIMILIAN CRAWFORD, MATTHEW CRUMRINE, JOHN DEWEY, JEFFREY DIAMOND,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

_____

2021-2015

_____

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00213-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**DAVID JONES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

_____

2021-2016

_____

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00257-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**TONY ROWE, ALIEU JALLOW, KARLETTA BAHE, JOHNNY DURANT, JESSE A. MCKAY, III, GEORGE DEMARCE, JACQUIE DEMARCE,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*
_____

2021-2017
_____

Appeal from the United States Court of Federal Claims
in No. 1:19-cv-00067-PEC, Judge Patricia E. Campbell-
Smith.

-------------------------------------------------

**D. P., T. S., J. V.,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*
_____

2021-2018
_____

Appeal from the United States Court of Federal Claims
in No. 1:19-cv-00054-PEC, Judge Patricia E. Campbell-
Smith.

-------------------------------------------------

**PLAINTIFF NO. 1, PLAINTIFF NO. 2, PLAINTIFF
NO. 3, PLAINTIFF NO. 4,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

————————————

2021-2019

————————————

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00094-PEC, Judge Patricia E. Campbell-Smith.

-------------------------------------------------

**I. P., A. C., S. W., D. W., P. V., M. R., R. C., K. W., B. G., R. H., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

————————————

2021-2020

————————————

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00095-PEC, Judge Patricia E. Campbell-Smith.

————————————

REYNA, *Circuit Judge*, dissenting.

This appeal involves two statutes. The Fair Labor Standards Act ("FLSA") requires employers, including the U.S. government, to pay workers earned wages on a regularly scheduled pay period basis. Employers that fail to pay their workers on a timely scheduled basis are subject to certain penalties, including liquidated damages. The other statute, the Anti-Deficiency Act ("ADA"), applies to government officials. It prohibits government officials from making expenditures, where the expenditure is not funded by duly passed appropriations. In other words, the government lacks authority to spend money it does not have.

The majority interprets the relevant provisions of the ADA and FLSA to mean that the ADA renders null the liquated damages provision of the FLSA. I disagree. I believe that each statute stands alone and that the relevant provisions of the two statutes are not inconsistent with each other.

From December 22, 2018, to January 25, 2019, the federal government partially shutdown due to lack of appropriations (funding). *Avalos v. United States*, 151 Fed. Cl. 380, 382 (2020); J.A. 274. To keep key parts of the government functioning, the government created two categories of federal employee: "excepted" and "non-excepted." Non-excepted employees were instructed to not show-up for work and received no compensation for the period of time they did not report for work. This appeal does not involve non-excepted employees.

The "excepted" employees were required to report for work during the shutdown, to continue working and to perform normal duties. Despite working and earning wages during the shutdown, the excepted employees were not paid for their work until the first payday after the shutdown ended. *Avalos*, 151 Fed. Cl. at 382–83. This means

that excepted employees received no pay on their regularly scheduled paydays during the shutdown.

At the time of the shutdown, Plaintiffs-Appellees were employed as Customs and Border Protection Officers for the U.S. Department of Homeland Security. These officers ("CBP Officers") were designated as excepted employees and were required to report for work. *Id.* at 382. They received no pay during the shutdown but were paid on the first regularly scheduled payday that came after January 25, 2019, the day the shutdown ended. *Id.*; J.A. 280–83.

On January 29, 2019, the CBP Officers filed their amended complaint in the United States Court of Federal Claims ("Court of Claims") seeking liquidated damages for the time they worked without pay during the shutdown. J.A. 288. The CBP Officers alleged that, under the FLSA, the government was liable for liquidated damages because during the shutdown it failed to pay wages on their regularly scheduled payday(s).

The government moved to dismiss the suit for failure to state a claim. The government did not dispute that the CBP Officers were not timely paid during the shutdown. The government asserted that the government shutdown was caused by a lack of general appropriation and, therefore, it was prohibited from paying the CBP Officers. According to the government, it cannot, as a matter of law, be held liable for liquidated damages that are based on wages not paid during the shutdown because the ADA prohibited it from paying the wages for which there was no funding during a shutdown. The Court of Claims denied the government's motion based largely on its decision in *Martin,* which involved issues identical to the issues in this case. *Avalos*, 151 Fed. Cl. at 387–91 (discussing *Martin v. United States*, 130 Fed. Cl. 578 (2017)). The government appeals the judgment of the Court of Claims.

According to the majority, the "central question in this appeal is how the Anti-Deficiency Act's prohibition on

government spending during a partial shutdown coexists with the FLSA's seemingly contradictory timely payment obligation." Maj. Op. 14. The majority reverses and remands to the Court of Claims, holding that the government cannot, as a matter of law, be held liable for liquidated damages under the FLSA where the failure to pay employee wages was due to a government shutdown. I disagree with my colleagues on several fronts.

First, the majority errs that as a matter of law, there is no FLSA violation in this case. The law is well-settled on the question of whether federal employees are entitled to liquidated damages under the FLSA when they are not paid on their regular payday. The FLSA makes clear that failure to pay wages on regularly scheduled paydays constitutes a FLSA violation.

The majority is also incorrect that liquidated damages cannot attach because the government was prohibited by the ADA, and presumably not of its own choosing, from paying the CBP Officers.

My sense is that the FLSA and ADA are distinct statutes with distinct purposes whose operations in this case neither intersect nor are otherwise inconsistent. Stated differently, the ADA in this instance does not trump the FLSA and render its liquidated damages provision null.

The FLSA provides in relevant part:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates . . . not less than $7.25 an hour.

29 U.S.C. § 206(a)(1)(C). The FLSA is administered to federal employees by the Office of Personnel Management ("OPM"). OPM has promulgated a regulation providing that employees must be paid "wages at rates not less than

the minimum wage . . . for all hours of work."
5 CFR § 551.301(a)(1).  The FLSA provides that employers
who violate these provisions "shall be liable to the em-
ployee . . . affected in the amount of their unpaid minimum
wages, or their unpaid overtime compensation . . . and in
an additional equal amount as liquidated damages."
29 U.S.C. § 216(b).

Again, the undisputed facts are that the government
required the CBP Officers to report to work during the
shutdown; and that the CBP Officers were not paid wages
on their regularly scheduled paydays.  These circum-
stances clearly apply to § 216(b) of the FLSA, and on this
basis, I would find that the government's failure to pay the
CBP Officers during the shutdown was a violation of the
FLSA.

The majority appears to agree with the foregoing con-
clusion, but my colleagues take steps to avoid saying so.
Namely, they engage in an unorthodox statutory interpre-
tation that first examines whether the statutes are contra-
dictory and whether the statutes can coexist.  *BedRoc Ltd.,
LLC v. United States*, 541 U.S. 176, 183 (2004) (The statu-
tory interpretation "inquiry begins with the statutory text,
and ends there as well if the text is unambiguous."); *see
also Me. Cmty. Health Options v. United States*, 140 S. Ct.
1308, 1321–22 (2020) (explaining that the ADA did not
"qualify" the government's obligation to pay an amount cre-
ated by the "plain terms" of a statute).  In so doing, the
majority concludes that the government is shielded from
liquidated damages if the failure to pay is due to a shut-
down.  In other words, the statutes can be said to coexist
because the FLSA is rendered nugatory.

There is no principled basis for the majority view.  In-
deed, the opposite is true.  The FLSA is remedial in nature,
and it acts as a shield to protect workers.  Not so with the
ADA.  The ADA is meant to punish government officials for
certain actions.  The ADA neither references the FLSA nor

the liquidated damages provision of § 216(b).  Nothing in the statues, or applicable caselaw, supports an argument that the ADA applies to federal workers.

The Supreme Court has recognized that the FLSA was enacted "to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) (citing H. Rep. No. 2738, 75th Cong., 3d Sess., pp. 1, 13, 21, and 28).  The FLSA recognizes that employees do not have equal bargaining power and serves to protect them.  *Id.*

Similarly, the Supreme Court has explained that the FLSA liquidated damages provision is not meant as punishment for the employer, but rather, focuses on compensating the employee.  *Id.* at 707 ("[T]he liquidated damages provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages.").

According to the Supreme Court, the ADA's requirements "apply to the official, but they do not affect the rights in this court of the citizen honestly contracting with the Government." *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 197 (2012) (citation omitted).

Here, the CBP Officers were honestly "contracting" with the government.  There is no legal support for the belief that government workers forfeit their FLSA protection at a time of shutdowns.  As the Supreme Court has noted, the insufficiency of an appropriation "does not pay the Government's debts, nor cancel its obligations." *Me. Cmty.*, 140 S. Ct. at 1321–22 (quoting *Ramah*, 567 U.S. at 197).  This court has recognized, "the Supreme Court has rejected the notion that the Anti-Deficiency Act's requirements somehow defeat the obligations of the government." *Moda Health Plan, Inc. v. United States*, 892 F.3d 1311, 1322

(Fed. Cir. 2018) *rev'd on other grounds*, *Me. Cmty.*, 140 S. Ct. 1308.

The majority fails to point to legal authority for the proposition that the ADA cancels the government's obligation to protect the very federal employees that the FLSA was intended by Congress to protect. I see no congressional requirement or Supreme Court precedent that negates liquidated damages under the FLSA or the ADA. Rather, the liquated damages provision of the FLSA "constitutes a Congressional recognition that failure to pay the statutory minimum *on time* may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency, and general well-being of workers' and to the free flow of commerce, that double payment must be made in the event of delay." *Brooklyn Sav.*, 324 U.S. at 707 (emphasis added) (citation omitted). And as this court has explained, the "usual rule" is "that a claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not paid." *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988).

Other regional circuits have concluded that a FLSA claim accrues when an employer fails to pay employees on their regular payday, and that the FLSA violation occurs on that date. *See Atl. Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1944) ("[I]f an employer on any regular payment date fails to pay the full amount . . . due an employee, there immediately arises an obligation upon the employer to pay the employee . . . liquidated damages."); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir. 1944) ("[O]vertime compensation shall be paid in the course of employment and not accumulated beyond the regular pay day . . . . [T]he failure to pay it, when due, [is] a violation of [the FLSA].”); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993) ("The only logical point that wages become 'unpaid' is when they are not paid at the time work has been done, the minimum wage is due, and wages are ordinarily paid—on payday."); *Olsen v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570,

1579 (11th Cir. 1985), *modified*, 776 F.2d 265 (11th Cir. 1985) ("The employee must *actually receive* the minimum wage each pay period.").

The majority asserts a number of other conclusions: that the ADA trumps the FLSA because it was passed first and is more specific than the FLSA; that requiring liquidated damages in this situation would lead to an "absurd result"; and that the government would be forced to "choose between a violation of the Anti-Deficiency Act or the FLSA." Maj. Op. 18–19. But we need not reach these questions because there is no justiciable conflict between the two laws. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) ("Respect for Congress as drafter counsels against too easily finding irreconcilable conflicts in its work . . . . Allowing judges to pick and choose between statutes risks transforming them from expounders of what the law *is* into policymakers choosing what the law *should be*."). I do agree with the majority that "where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Maj. Op. 19 (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1018 (1984)).

Payday is important to the everyday worker. Missing a paycheck can have devasting consequences. That is what this case is about. Congress sought a remedy for such consequences by extending the potential for liquidated damages. Here, the employer should not be absolved of adherence to the FLSA, more so where the employer is the government that brought on the shutdown.

The Court of Claims correctly analyzed the statute and binding Supreme Court precedent. I would affirm the Court of Claims' decision and allow the case to continue.